***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted September 27, 2021, affirmed August 31, 2022

In the Matter of T. S. C.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

T. S. C.,
*Appellant.*

Clackamas County Circuit Court
20CC05261; A174738

Todd L. Van Rysselberghe, Judge.

Alexander C. Cambier and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Daniel Norris, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Appellant seeks reversal of an order involuntarily committing her to the custody of the Mental Health Division for a period not to exceed 180 days, arguing that the evidence was insufficient to support a determination that she suffered from a mental disorder that made her unable to provide for her basic personal needs. Because the record is legally sufficient to support the trial court's conclusion, we affirm.

Neither party has requested that we review the record *de novo*, and we conclude that this is not an "exceptional" case that warrants *de novo* review. *See* ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). Thus, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome. *State v. T. W. W.*, 289 Or App 724, 726, 410 P3d 1032 (2018).

ORS 426.130 outlines the framework for the civil commitment of a "person with mental illness." That statutory framework defines a "person with mental illness" to include a person who, because of a mental disorder, is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005(1)(f)(B). To meet that standard, the state must prove that the person is unable to provide for his, her, or their "basic personal needs in a way that leaves the person at nonspeculative risk of 'serious physical harm'—meaning that the person's safe survival will be compromised—in the near future, even though that risk is not imminent." *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019).

On appeal, appellant's challenge is narrow. There is no dispute that appellant, who has been diagnosed with bipolar I disorder with psychotic features, has a mental disorder and that there is a causal connection between the mental disorder and the alleged inability to meet her basic needs. Appellant's challenge focuses on whether there was sufficient evidence for the trial court to conclude that she

would sustain serious physical harm in the near future due to lack of food, water, shelter, or medical care. We conclude that there was sufficient evidence from which the trial court could have found that appellant was unable to provide for her basic personal needs necessary to avoid serious physical harm in the near future.

The record contains evidence that appellant had lost nine percent of her body weight over a six-month period before the commitment hearing, had been hardly eating before her commitment despite being provided with meals, looked weak and unhealthy, and was barely at a healthy weight at the time of the hearing. Due to poor fluid intake, she had elevated creatinine levels that could damage her kidneys. Although appellant was generally healthy otherwise, there was evidence that, because of appellant's mental disorder, appellant would continue to lose weight and would "continue to not take in what she needs in order for her body to work as far as food and drink." *See, e.g.*, *State v. N. S.*, 306 Or App 140, 148-49, 472 P3d 818 (2020) (explaining that, among other evidence, the appellant's inability or refusal to obtain and consume adequate food supported her basic needs commitment and concluding that "[i]t is common knowledge that a serious risk of harm can result from the inadequate intake of food and, here, appellant had lost weight and was not eating the food she was offered in the hospital").

There was also sufficient evidence for the trial court to conclude that the risk of serious physical harm would occur in the near future. Two witnesses testified that it was likely that appellant would continue to lose weight and further decompensate if she was in an unsupported environment. Moreover, although some of the identified risks of injury due to appellant's poor intake—such as kidney failure and the need for dialysis or a kidney transplant—were "pretty far down the line" and thus may not satisfy the "near future" requirement, there was also evidence that appellant was at risk of "imminent death" due to her poor intake. The mental health investigator testified that, due to her mental disorder, appellant had been unable "to provide intake necessary to sustain her life" even in "a very controlled setting where she's literally being handed food" and it was unlikely

that appellant would be able to meet her intake needs in the future, "indicating a very substantial risk of imminent death due to her poor intake and care for herself[.]" That evidence, when viewed together with the other evidence in the record including her nine percent weight loss in the six months leading up to the commitment hearing and evidence that she would continue to decompensate if released, leads us to conclude that the record is legally sufficient to support the trial court's determination that there is a nonspeculative risk of serious physical harm in the near future due to appellant's inability to care for her basic needs.

Affirmed.